UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWIN CRUZ MORALES, et al., <br><br> Plaintiffs, <br><br> -against- <br><br> NEXT STOP 2006, INC., et al., <br><br> Defendants. | Case No. 1:22-cv-03311 (JLR) <br><br> **OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

  Plaintiffs Edwin Cruz Morales, Gerson Polanco, Eduardo Mixi, Antonio Bruno, Luciano Calixto, Isaac Diaz, Fernando Leyva, Edgar Luna, Cornelio Rincon Leon, Leonel Flores, Edwin Alba, Raul Herrera, Luciano Lopez, Rafael Rodriguez, Nicholas Figueroa, Luis Castillo, Fernando Sanchez, Arismendiz Hidalgo, Jose Grande Hernandez, and Angel M. Vargas Martinez (together, "Plaintiffs") bring this action against Next Stop 2006, Inc., Chaim Littman, and Carolina Littman (together, "Next Stop Defendants") and Abivad, LLC and Joshua Bernstein (together, "Abivad Defendants" and together with Next Stop Defendants, "Defendants"), for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), New York Labor Law ("NYLL"), and New York City Human Rights Law.  See ECF No. 27 ("Amended Complaint" or "Am. Compl.").  Now before the Court are Defendants' motions to dismiss the Amended Complaint for failure to state a claim, or in the alternative, to transfer this action to the District of New Jersey.  See ECF Nos. 38, 53.  For the following reasons, the Court grants Defendants' motions to transfer and declines to rule on Defendants' motions to dismiss.

## BACKGROUND[1]

Next Stop 2006, Inc. is a corporation based in New Jersey that provides furniture installation and other services to customers in New Jersey, as well as states like Connecticut, New York, Pennsylvania, Maryland, Delaware, Virginia, and Georgia. *See* ECF No. 55,

---

[1] "[I]n deciding a motion to transfer venue, the Court may consider factual submissions, including declarations, by defendants, who have the burden to justify a change of venue." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013). For purposes of the motions to transfer, the Court has considered the Amended Complaint (ECF No. 27), Next Stop Defendants' opening brief in support of its motion (ECF No. 54 or "Next Stop Br."), and supporting declaration, Abivad Defendants' opening brief in support of its motion (ECF No. 41 or "Abivad Br."), and supporting declarations, Plaintiffs' briefs in opposition (ECF No. 57 or "Next Stop Opp." and ECF No. 49 or "Abivad Opp."), and supporting declarations, Next Stop Defendants' reply brief (ECF No. 63 or "Next Stop Reply"), Abivad's reply brief (ECF No. 58 or "Abivad Reply") and Plaintiffs' sur-reply (ECF No. 74) and supporting affidavit, only to the extent they address new arguments and facts raised for the first time in Next Stop Defendants' reply brief (*see* ECF No. 66 (order granting leave to file sur-reply)).

Defendants argue that Plaintiff Vargas' declaration should not be considered because he is a Spanish-speaker, and the declaration is not accompanied by a "Certificate of Translation . . . signed by such interpreter under oath before a Notary Public swearing that the interpreter is fluent in both Spanish and English . . . ." Next Stop Reply at 3. To be sure, "[i]f the declarant himself does not speak and read English . . . the party relying on his English-language declaration must also submit documents sufficient to establish that he understood what he was signing." *Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016). Generally, courts require that a declarant who does not speak English submit a declaration in his or her native language, in addition to the English version, or for the declarant to sign a separate declaration swearing that the declaration was translated for him or her. *Id.* at 709-10. Here, Plaintiff Vargas' affidavit states that the "affidavit was prepared with the assistance of a Spanish interpreter and I approve the submission of this English translation for the convenience of the court, as accurate." ECF No. 50-1, Affidavit of Angel M. Vargas Martinez ("Vargas Aff.") ¶ 1. But "[t]he declaration does not disclose who translated the declaration to Plaintiff or what that person's facility is in Spanish or English." *Barrera v. Forlini's Rest., Inc.*, No. 22-cv-1256 (VEC), 2022 WL 3348106, at *2 n.2 (S.D.N.Y. Aug. 12, 2022). Therefore, the affidavit appears to be improper. Nevertheless, because the Court is granting Defendants' motions even if the affidavit were considered, it will not strike the affidavit. *See id.* ("Because, however, the declaration is inadequate to support the motion, the Court will not strike it."). Plaintiff Figueroa, who submitted the other affidavit in support of Plaintiffs' opposition to Defendants' motions, declares that he speaks both English and Spanish, and therefore his affidavit does not create the same concerns. *See* ECF No. 50-2, Affidavit of Nicholas Figueroa ("Figueroa Aff.") ¶ 5.

Affidavit of Chaim Littman in Support of Motion to Transfer ("Littman Aff.") ¶ 2. Its warehouse is located in Clifton, New Jersey, and its only office is located in Fair Lawn, New Jersey. *Id.* Defendant Chaim Littman is the current owner and president of Next Stop, and Defendant Carolina Littman, his wife, works there as well. *Id.* ¶ 3; Am Compl. ¶¶ 14, 17. Both are residents of New Jersey. Littman Aff. ¶ 3. Defendant Abivad LLC, which does business as Office Furniture NYC, is a company that specializes in "office clean outs" and transports furniture. Am. Compl. ¶¶ 20-21. Abivad LLC's office is located in Teaneck, New Jersey. *Id.* ¶ 20. Defendant Joshua Bernstein, the alleged owner and manager of Abivad, is also a resident of New Jersey. *Id.* ¶¶ 24-25. Plaintiffs allege that Next Stop Defendants and Abivad Defendants held themselves out as partners. *Id.* ¶¶ 29-31.

Plaintiffs are twenty former employees of Next Stop 2006, Inc., who worked in various roles such as drivers, installers, construction workers, and helpers. *See, e.g.*, *id.* ¶¶ 45, 83, 124, 232, 301. As described in the Amended Complaint, Plaintiffs are all residents of New Jersey. *See id.* ¶¶ 44, 64, 81, 103, 122, 143, 162, 181, 214, 230, 247, 264, 284, 300, 316, 332, 348, 365, 386, 404. They allege that, among other things, they were not paid in accordance with the minimum wage provisions set forth in FLSA or the NYLL, they were paid a day rate rather than the required hourly rate, they were not paid overtime, and many of them were discriminated against due to their perceived immigrant status. *Id.* ¶ 35; *see, e.g.*, *id.* ¶¶ 53, 510.

According to Next Stop Defendants, Plaintiffs began their days at the Next Stop warehouse in New Jersey, where they dissembled furniture from the previous day, loaded up their trucks, and delivered and assembled furniture to clients in various locations. Littman Aff. ¶ 4. Plaintiffs do not disagree, but contend that other than mornings and evenings spent in New Jersey, about 80% of their jobs were performed in New York. *See, e.g.*, Figueroa Aff. ¶¶ 8-10.

This is Plaintiffs' primary argument for why this case is before the proper Court, and why New York law applies. Defendants dispute this characterization. *See* Littman Aff. ¶ 2 (contending that services and customers "are primarily located in New Jersey," but that some work is done in other states); *see also, e.g.*, ECF No. 61, Affidavit of Victor Izelo ("Izelo Aff.") ¶ 3 (contending that Plaintiffs spent 80% of time in New Jersey and 20% of time in New York); ECF No. 59, Affidavit of Anais Aguilar ("Aguilar Aff.") ¶ 11 (contending that Plaintiffs on average spent 30-35% of time in New York state and 20-25% of time in New York City).

In their reply, Next Stop Defendants submitted alleged work records indicating that Plaintiffs' description of where they spent their time was incorrect. *See* ECF No. 62-3. Despite this, Plaintiff Figueroa has maintained that he did a majority of his work in New York City, and that Defendants – both Next Stop Defendants and Abivad Defendants – frequently joined him in Manhattan for jobs and meetings. Figueroa Aff. ¶¶ 14-20; *see also* ECF No. 74, Sur-Reply Affidavit of Nicholas Figueroa ("Figueroa Sur-Reply") ¶¶ 13-14 (questioning accuracy of work logs provided at ECF No. 62-3). Abivad Defendants have submitted a declaration indicating that Abivad's office and connections are primarily in New Jersey, and that Defendant Bernstein has no knowledge of the amount of time Plaintiffs spent in New York while working for Next Stop Defendants. *See* ECF No. 40, Joshua Bernstein Affidavit in Support of Motion to Dismiss and Transfer Venue ("Bernstein Aff.") ¶¶ 2-4, 7. In light of these conflicting facts, Defendants have moved to dismiss the Amended Complaint on the grounds that the claims fail to state a cause of action under New York law; in the alternative, Defendants have moved to transfer the action to New Jersey.

## LEGAL STANDARD

Under 28 U.S.C. § 1391(b), a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

For venue purposes, a "natural person" resides in the judicial district where the person is domiciled. 28 U.S.C. § 1391(c)(1). An "entity with the capacity to sue and be sued in its common name . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2).

When a defendant contends that an action has been brought where venue is not proper, he or she may move to transfer the action pursuant to 28 U.S.C. § 1406(a). Even where venue is proper, a district court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice . . . ." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a)." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)). Transfer may be *sua sponte*. *Id*. at 82, 90 (affirming *sua sponte* transfer); *see Bank of Am., N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013) ("The power of district courts to transfer cases under Section 1404(a) *sua sponte* . . . is well established."). "The determination as to whether to transfer a matter is an individualized, case-by-case consideration of convenience and fairness." *Ferrier v. Q Link Wireless*, 413 F. Supp. 3d 135, 138 (E.D.N.Y. 2018) (internal quotation marks and citations omitted). In determining whether to transfer a case, courts consider: "(1) the plaintiff's choice of

forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Corley*, 11 F.4th at 89 (quoting *D.H. Blair & Co.*, 462 F.3d at 106-07). "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 292 (S.D.N.Y. 2018).

## DISCUSSION

As an initial matter, Defendants bring their motions to transfer apparently under both 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). *See* Next Stop Br. at 12-18; Abivad Br. at 13-20. However, Defendants' papers do not focus on why venue is improper in the Southern District of New York, and instead, make arguments in support of a transfer under Section 1404(a). *See, e.g.*, Next Stop Br. at 14-18 (applying Section 1404(a) factors); Abivad Br. at 15-20 (same). Therefore, the Court will evaluate whether the Court should transfer this action pursuant to Section 1404(a).[2]

Transfer is only appropriate if the case could have originally been brought in the transferee district. 28 U.C.S. § 1404(a). Defendants ask the Court to transfer this case to the District of New Jersey. All Defendants are residents of New Jersey for purposes of venue. Therefore, venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1), and the suit could have originally been brought there.

The Court next turns to the factors to be considered when deciding whether to exercise its discretion to transfer a case. As to the first factor, "[t]here is a strong presumption in favor of a

---

[2] Because Plaintiffs have alleged that a substantial part of their work occurred in the Southern District of New York, they have likely satisfied the threshold requirement for proper venue under 28 U.S.C. § 1391(b)(2).

6

citizen or resident plaintiff's choice of forum unless private and public interest factors clearly point to trial in the alternate forum." *Ayers v. Arabian Am. Oil Co.*, 571 F. Supp. 707, 708 (S.D.N.Y. 1983). Courts in this Circuit give this factor less weight when a "plaintiff chooses a forum other than his or her residence." *Matter of Grebe Shipping LLC*, 448 F. Supp. 3d 161, 165 (D. Conn. 2020) (internal citation omitted); *see Paulson v. Guardian Life Ins. Co. of Am.*, No. 22-cv-02172 (GHW) (JLC), 2022 WL 2693632, at *4 (S.D.N.Y. July 12, 2022) ("Here, [the plaintiff's] choice of forum is not entitled to great weight because this District is not her home, nor are the operative facts tied to this District."). Indeed, "[i]n 'the absence of factual proffers indicating that relevant evidence is likely to be located' in the chosen district, the choice of a non-home district may indicate forum shopping." *Lewis-Gursky v. Citigroup, Inc.*, No. 15-cv-3213 (LTS) (DCF), 2015 WL 8675449, at *2 (S.D.N.Y. Dec. 11, 2015) (quoting *Hix v. Morgan Stanley & Co. LLC*, No. 15-cv-00217 (LTS) (JCF), 2015 WL 1726548, at *2 (S.D.N.Y. Apr. 15, 2015). Here, every single Plaintiff has alleged that they are a resident of New Jersey, not New York. *See* Am. Compl. ¶¶ 44, 64, 81, 103, 122, 143, 162, 181, 214, 230, 247, 284, 300, 316, 332, 384, 365, 386, 404. Thus, the Court gives little deference to the fact that New Jersey Plaintiffs chose to bring their claims in the Southern District of New York.

Two key factors – the convenience of witnesses and the convenience of the parties – weigh in favor of Defendants' requested transfer. "The convenience of the forum for witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) (internal citations and quotation marks omitted). "The convenience of the parties depends on the parties' principal place of business, the location of their offices, or their residences." *Paulson*, 2022 WL 2693632, at *4 (internal citation and quotation marks omitted).

"The Court must consider the convenience of both party and non-party witnesses." *Martignago v. Merrill Lynch & Co.*, No. 11-cv-3923 (PGG), 2012 WL 112246, at *5 (S.D.N.Y. Jan. 12, 2012). Courts generally must consider not only the number of witnesses located in certain places, but the "materiality, nature, and quality of each witness . . . ." *Id.* Here, all parties are residents of New Jersey. Defendants point out that all Plaintiffs in this action reside in New Jersey, *see* Next Stop Br. at 16, and there are *twenty* Plaintiffs in this case, *see generally* Am. Compl. Plaintiffs' testimony will certainly be crucial in this FLSA, wage and hour, and employment discrimination action. Importantly, Defendants' offices, warehouse, and other employees – all potential witnesses – are also all located in New Jersey. *See, e.g.*, Am. Compl. ¶¶ 11, 20, 24, 30; Littman Aff. ¶ 2. This weighs in favor of transfer. *See Farrior v. George Weston Bakeries Distrib., Inc.*, No. 08-cv-2705 (JFB) (WDW), 2009 WL 113774, at *4-6 (E.D.N.Y. Jan. 15, 2009) (transferring FLSA case in part because most employee-witnesses were located in Pennsylvania which "strongly" weighed in favor of transfer). The only potential non-party witnesses referenced by the parties are Defendants' New York-based customers; Plaintiffs mention these potential witnesses in passing, arguing that the "bulk" of customers are in New York and will be relevant for discovery. *See* Abivad Opp. at 17-18. But to the extent these witnesses are in New York, that fact does not outweigh the numerous party witnesses and employees located in New Jersey whose testimony will be central to this case. *See Farrior*, 2009 WL 113774, at *4-6. Accordingly, on balance and considering both the number of party and non-party witnesses in New York and New Jersey, as well as the likely nature of their testimony, the Court concludes that this factor weighs in favor of transferring this case to New Jersey,

where all of the parties are located and where it is otherwise most convenient for all of the parties and known witnesses.[3]

The Court next turns to the locus of operative facts. "In wage and labor disputes, courts find that the locus of operative facts are found at the locations where employees worked." *Chen v. Arts Nail Putnam Valley Inc.*, No. 1:14-cv-03037 (ALC), 2017 WL 3017712, at *4 (S.D.N.Y. July 14, 2017). The parties dispute where the majority of work took place. *See, e.g.*, Figueroa Aff. ¶¶ 8-10 (claiming 80% of jobs were performed in New York); Littman Aff. ¶ 2 (contending that services and customers "are primarily located in New Jersey," but that some work is done in other states); Izelo Aff. ¶ 3 (contending that Plaintiffs spent 80% of time in New Jersey and 20% of time in New York); Aguilar Aff. ¶ 11 (contending Plaintiffs on average spent 30-35% of time in New York state and 20-25% of time in New York City). However, the parties agree that Plaintiffs' days largely started and ended in New Jersey, Defendants' offices were there, and that the warehouse was there. *See, e.g.*, Littman Aff. ¶ 4, Figueroa Aff. ¶ 10. Therefore, the locus of undisputed operative facts – including places of contracting, significant portion of work, record keeping and tracking for wage and hours purposes, and many interactions for purposes of the discrimination claims – appears to be New Jersey, and not New York.[4] Additionally, in further

---

[3] For the same reasons, and particularly in light of the fact that Defendants' offices are in New Jersey, the Court also concludes that the location of relevant documents and relative ease of access to sources of proof also weighs in favor of transfer, although this factor is not particularly significant. *See, e.g.*, *Farrior*, 2009 WL 113774, at *6 ("[T]he Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production.").

[4] The Court does not resolve the factual or legal disputes at issue in the motions to dismiss, *i.e.*, whether the majority of Plaintiffs' work took place in New York, or whether, in light of where the work here occurred, New Jersey or New York law applies. The transferee court will be able to resolve those disputes either at the motion to dismiss stage, or after the factual record has developed. *See Billing v. Com. One, Inc.*, 186 F. Supp. 2d 375, 379 (S.D.N.Y. 2002) ("It is assumed that the federal courts in both this district and the [transferee district] are equally

support of this factor, Defendants point out that Plaintiffs filed for unemployment and disability in New Jersey around the time of this action. *See, e.g.*, ECF No. 55-5 ("Ex. E"). New Jersey has a clear and strong relationship to the facts underlying this action. Therefore, the Court finds this factor weighs in favor of transfer.

Finally, the Court considers the relative means of the parties and the availability of process to compel the attendance of unwilling witnesses. "Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994). Neither party here has articulated the means of the parties as relative to one another. Nor has either party "identified any witnesses who would be unwilling to appear before either this Court or [the transferee court]." *Ferrier*, 413 F. Supp. 3d at 139-40. Accordingly, the Court finds these factors to be neutral.

## CONCLUSION

On balance, and particularly in light of the fact that all of the parties and the majority of potential witnesses reside in New Jersey, the Court concludes that a transfer to the District of New Jersey is in the interests of justice. Thus, the Court exercises its discretion to GRANT Defendants' motions to transfer pursuant to 28 U.S.C. § 1404(a). In light of this ruling, the Court has no occasion to rule on Defendants' motions to dismiss pursuant to Rules 12(b)(6) and 12(c). The transferee court may choose to resolve the motions or solicit re-briefing on them. *See, e.g.*, *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 413

---

familiar with the legal principles necessary to resolve this case."). Here, the Court concludes that sufficient undisputed facts provide for a locus of operative facts in New Jersey.

(S.D.N.Y. 2017) (declining to rule on motion to dismiss for failure to state a claim to enable the transferee court to address).

The Clerk of Court is respectfully directed to transfer this action to the District of New Jersey and to terminate all pending motions, deadlines, and hearings.

Dated: January 5, 2023
      New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge